UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ARBOR NETWORKS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 12-11322 |
| v. ) | |
| ) | |
| WILLIAM E. RONCA III, RICHARD SHIRLEY, ) | |
| DOUGLAS FLEMING, JAMES GILL, JAMES ) | |
| NEEL, JASON MCEACHIN, MICHAEL L. ) | |
| PORTER, ANDREW HENKART, PAUL ) | |
| SCANLON, MICHAEL HOLLYMAN, and ) | |
| RED LAMBDA, INC., ) | |
| ) | |
| Defendants. ) | |

**SUPPLEMENTAL AFFIDAVIT OF CARLOS MORALES IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION**
(Leave to File Granted on August 8, 2012)

I, Carlos Morales, being duly sworn, do hereby depose and say as follows:

1.  I am of legal age and believe in the obligation of an oath. I make the following Affidavit based on personal knowledge unless otherwise stated.

2.  I am the Vice President - Sales Engineering and Operations for the Plaintiff in the above-captioned action, Arbor Networks, Inc. ("Arbor" or "Plaintiff").

3.  I submit this Supplemental Affidavit in support of Arbor's Motion for Temporary Restraining Order and Motion for Preliminary Injunction, and to respond to various misstatements in the Affidavits filed by the individual defendants.

4.  The following is a list of information which was available to the Individual Defendants while they worked for Arbor that could be used against Arbor in a competitive

14702751v.3

environment and/or could be used to help produce a product that competes with Arbor's products:

- Pricing and discounting of deals in specific markets, for specific technologies and for specific customers;

- Pricing of products and services including maintenance services;

- Customer contact information and intelligence on roles/responsibilities;

- Product roadmaps and vision information showing where Arbor is going from a technology perspective;

- Access to the bug system showing deficiencies in the product;

- Access to the feature request section of the bug system which shows things that customers have asked of Arbor that we have not delivered;

- Access to product documentation showing the extent of feature/functionality;

- System performance data for data and packet processing;

- RFP responses showing how Arbor positions its solutions; and

- Marketing plans.

5.  Defendant Henkart's analogy that comparing Red Lambda's products with Arbor's is akin to comparing a power washer and a dishwasher is not apt.  Unlike a power washer and a dishwasher, both Arbor's products and Red Lambda's products are bought by the same type of customers and perform similar functions, and it is unlikely that customers will buy both at once.

6.  Moreover, the Individual Defendants' intimate knowledge of Arbor's products would allow them to build a product that competes directly with Arbor (or would allow them to add similar functionality to Red Lambda's existing products).

7. Henkart fails to note his increase in pay, both base salary and commission, when he received his promotion. He was also offered a retaining bonus. In fact, Henkart was one of the SEs most over quota the year prior to his departure, and was handsomely rewarded for it.

8. Henkart also claims that he had to sell a certain amount of the Pravail product to get incentives. While there were new incentives that were introduced in 2012 that rewards SEs that sold the most Pravail, these incentives went above and beyond the normal sales commission and potential acceleration that the SEs make, and was replacing a bonus program based on over-quota sales that was used the years before. This was not a significant change to Henkart's earning potential.

9. With respect to defendant Gill's claim that the hard disk of his Arbor laptop failed, Rick Jenssen, Arbor's Sales Engineering Manager, and I tried contacting him several times over the phone and/or IM to ask him to return his laptop. He did not respond to the inquiries, and never informed us of any issue with the hard drive.

10. With respect to defendant Neel's claims regarding his poor performance evaluations, his affidavit leaves out critical details concerning my requirements of him in 2008 that ultimately led to his poor performance review in 2010. I, and others in Arbor's leadership, had growing concerns about how Marc Connors, defendant Fleming, and defendant Ronca (the account team) were managing some of Arbor's most important accounts. On many occasions, it became clear that the account team was continually making promises to their customers about feature, functionality, timeframes, equipment and pricing that they were not authorized to provide, and were ultimately damaging to Arbor's reputation with the customer, project timelines and engineering deliverables. When Neel began working with the accounts, defendant Hollyman and I instructed him to communicate to his management all commitments made on

behalf of Arbor to the customer base so that we could manage expectations accordingly. At the request of Ronca and Fleming, he refused to do so, once again leading to situations where Arbor was not appraised of critical customer situations. This was one of the reasons for the concerns expressed in the performance evaluation referenced in Neel's affidavit.

11. Despite the concerns raised in his performance evaluation related to transparency, the referenced performance evaluation included considerable amounts of praise for Neel's strengths.

12. Additionally, Neel neglects to mention that the referenced performance evaluation was issued by defendant Hollyman, his immediate manager at the time.

13. Neel also omits the fact that at the end of 2011, Arbor gave him a commission of 80% of his target, even though he had actually achieved significantly less than that.

14. Defendant McEachin does not hold a secret or top secret clearance. Contrary to what his affidavit suggests, under no circumstances should he have had sensitive Department of Defense information on his computer, nor did he inform Arbor of this concern.

15. Additionally, Arbor has other employees in the immediate area of McEachin's home to whom he could have returned his computer.

16. The Individual Defendants claim that they were never aware that Red Lambda is a competitor. However, when they provided notice, I asked defendants McEachin, Gill, and Neel if they were going to a competitor and I specified that Arbor considered Red Lambda a direct competitor. They all refused to tell me their new employer, and Gill added that he didn't think that Red Lambda was competitive.

[REST OF PAGE INTENTIONALLY LEFT BLANK]

14702751v.3

The foregoing statements are made under the pains and penalties of perjury.

Dated: August 6, 2012

            /s/ *Carlos Morales*
            Carlos Morales

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants, as identified on the Notice of Electronic File ("NEF"), and paper copies will be sent to those indicated as non-registered participants on August 8, 2012, by first class mail.

            /s/ *Dawn Mertineit*
            Dawn Mertineit

14702751v.3