UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARBOR NETWORKS, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WILLIAM E. RONCA III, RICHARD SHIRLEY, )<br>DOUGLAS FLEMING, JAMES GILL, JAMES )<br>NEEL, JASON MCEACHIN, MICHAEL L. )<br>PORTER, ANDREW HENKART, PAUL )<br>SCANLON, MICHAEL HOLLYMAN, and )<br>RED LAMBDA, INC., )<br>)<br>Defendants. )<br>) | C.A. No. 12-11322 |

### PLAINTIFF ARBOR NETWORK, INC.'S OPPOSITION TO DEFENDANT RED LAMBDA, INC.'S MOTION TO DISMISS

Plaintiff Arbor Networks, Inc. ("Arbor" or "Plaintiff") hereby opposes Defendants Red Lambda, Inc.'s Motion to Dismiss (the "Motion"). As set forth below, Red Lambda's Motion[1] should be denied because Arbor has plead facts sufficient to state viable claims against Red Lambda.

### ARGUMENT

**I.    Standard of Review**

To survive a motion to dismiss, a claim "need not provide detailed factual allegations" but rather must simply allege facts sufficient "to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 555 (2007). In evaluating a motion to dismiss, the Court must draw all reasonable inferences in the non-moving party's favor and accept all well-pleaded facts in the Complaint as

---

[1] The Motion is actually a *partial* motion to dismiss, as Red Lambda has not moved to dismiss Count VI against it for misappropriation of trade secrets and/or confidential business information.

true. *Doucot v. IDS Scheer, Inc.*, 734 F. Supp.2d 172 (D. Mass. 2010); *Kennedy v. Town of Billerica*, 594 F. Supp.2d 117, 122 (D. Mass. 2009). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. *Nollet v. Justices of the Trial Court of Mass.*, 83 F. Supp. 2d 204, 208 (D. Mass. 2000), *aff'd*, 248 F.3d 1127 (1st Cir. 2000).

Arbor's First Amended Verified Complaint (the "Complaint") clearly satisfies the liberal pleading standards set forth in Fed. R. Civ. P. 8(a), which the Supreme Court analyzed in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Rule 8(a) requires only that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal punctuation and citations omitted). "Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of wrongdoing. *Id.* at 545. To that end, the plaintiff "need only give the defendant fair notice of what…the claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a plaintiff must only allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 563. In *Iqbal*, the Supreme Court confirmed that a claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678.

"While defendants may prefer highly detailed factual allegations, a generalized statement of facts is adequate so long as it gives the defendant sufficient notice to file a responsive pleading." *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 72-73 (1st Cir. 2000). Thus,

14864203v.1

when a district court reviews the sufficiency of a complaint at the procedural stage of a motion to dismiss, "before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (overruled on other grounds). The Complaint, therefore, "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). This liberal standard places a substantial burden on Rule 12(b)(6) movants -- a substantial burden which Red Lambda has failed to meet here.

As set forth below, Arbor has clearly satisfied the liberal pleading standard that it provide a "short and plain statement of the claim" per Fed. R. Civ. P. 8(a). Accordingly, it appears that Red Lambda is suggesting that Arbor be held to heightened pleading standards, despite the fact that claims for intentional interference are not subject to a heightened pleading standard. *Charles River Data Systems, Inc. v. Oracle Complex Systems Corp.*, 788 F. Supp. 54, 60 (D. Mass. 1991) ("Allegations of interference with contractual relations do not require any heightened level of particularity"). Nor are claims for violations of Chapter 93A subject to a heightened pleading standard, unless they involve fraud (which is not the case here). *See Crisp Human Capital Ltd. v. Authoria Inc.*, 613 F. Supp.2d 136, 139 (D. Mass. 2009) ("to the extent it does not involve fraud, a Chapter 93A claim is not subject to a heightened pleading requirement"); *Declude, Inc. v. Perry*, 593 F. Supp.2d 290, 296 (D. Mass. 2008) (Chapter 93A claims are not subject to heightened pleading standard under Fed. R. Civ. P. 9(b) unless they involve fraud).

Arbor has detailed the grounds for the relief that should be granted in this case in over 200 well-pled factual allegations. The Complaint contains significant factual allegations that constitute far more than the "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" rejected in *Iqbal* and *Twombly*. As set forth below, the factual allegations set forth in the Complaint for these claims are sufficient "to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true," and thus the Motion should be denied. *Twombly*, 550 U.S. at 555.

II.  **The Complaint States a Claim for Intentional Interference Against Red Lambda.**

Contrary to Red Lambda's assertions, the Complaint pleads sufficient facts to support a claim against Red Lambda for intentional interference with contractual relations. In order to state a claim for intentional interference with contractual relations, Arbor must prove: (1) it had an existing business relationship or contemplated contract of economic benefit; (2) Red Lambda knew about such relationship; (3) Red Lambda intentionally interfered with that relationship with improper motive or means; and (4) Arbor was actually damaged as a direct result of Red Lambda's conduct. *See Mass Cash Register, Inc. v. Comtrex Sys. Corp.*, 901 F. Supp. 404, 421 (D. Mass. 1995) (citations omitted). Arbor has satisfied all of these elements.[2]

    a. **The Complaint Alleges that Red Lambda had Knowledge of Arbor's Contractual Relationships.**

The Complaint sets forth ample facts to support Arbor's allegation that Red Lambda knew about Arbor's contractual relationships with the Individual Defendants. Cmp. ¶¶ 122, 190. First, the Complaint alleges that Section 8 of the Danaher Agreement (attached to the Complaint at Exhibit A) provided that the signatories thereto would "affirmatively provide [the Danaher Agreement] to all subsequent employers." *Id.* at ¶ 67. Accordingly, it is reasonable to infer that

---

[2] Red Lambda does not argue that Arbor has failed to allege facts supporting the first and fourth parts of this test.

14864203v.1

Ronca, Scanlon, and Hollyman provided their Danaher Agreements to Red Lambda, and that Red Lambda therefore had knowledge of these agreements. Further, this Court can reasonably infer therefrom that Red Lambda knew or should have known that the remaining Individual Defendants also had non-compete agreements. Additionally, the Court can draw the reasonable inference that Ronca, having signed a Danaher Agreement himself (*id.* at ¶¶ 57, 59), knew or should have known that the remaining Individual Defendants had signed similar agreements, which knowledge was imputed to Red Lambda. *See, e.g., Cheng v. Sunoco, Inc. (R&M)*, 2010 WL 5437235, at *5 (D. Mass. Dec. 22, 2010) (knowledge of employee, as agent acting within the scope of her authority was imputed to employer); *Sunrise Props., Inc. v. Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald, P.C.*, 425 Mass. 63, 66-67 (1997) (under agency principles, notice to a corporation's agent, including an employee, is notice to the corporation).[3]

      The Complaint also specifically alleges that Arbor sent a cease and desist letter to Red Lambda's Executive Chairman and CEO, Bahram Yusefzadeh, referencing the Individual Defendants' employment agreements and attaching the agreements for the Individual Defendants except Scanlon and Hollyman (as to whom Arbor then had no knowledge of their relationship with Red Lambda). Cmp. at ¶ 125. Even if Red Lambda did not know or should not have known of the agreements prior to that point (which Arbor denies), certainly, after that point, Red Lambda had notice of the Individual Defendants' employment agreements, yet continued to employ them despite the fact that such continued employment constituted a breach of their respective agreements. This is especially so with respect to Scanlon and Hollyman, who did not

---

[3] *See also MPW Indus. Servs., Inc. v. Pollution Control Sys., Inc.*, 2006 WL 640438, *8 (S.D. Ohio Mar. 9, 2006) (vice president's knowledge of contract imputed to company for purposes of intentional interference claim); *B & F Sys., Inc. v. LeBlanc*, 2011 WL 4103576, *16 (M.D. Ga. Sept. 14, 2011) (same); *Beck v. Deloitte & Touche, Deloitte, Haskins & Sells, Ernst & Young, LLP*, 144 F.3d 732, 736 (11th Cir. 1998) (under Florida law, knowledge of a corporate officer whose misbehavior brings short-term gain to corporation or merely injures a third party is imputed to the corporation, even if the misbehavior ultimately causes harm to the corporation); *United Feature Syndicate, Inc. v. Sunrise Mold Co.*, 569 F. Supp. 1475, 1480 (S.D. Fla. 1983) (knowledge of officers imputed to the corporation itself).

14864203v.1

join Red Lambda until after Arbor sent a cease and desist letter to Red Lambda's CEO referencing the remaining Individual Defendants' employment agreements. *Id.* at ¶¶ 96-97, 125. It thus strains credulity to accept Red Lambda's contention that the allegations set forth in the Complaint do not support Arbor's claim that Red Lambda knew or should have known of Arbor's contractual agreements with the Individual Defendants.

### b. The Complaint Alleges that Red Lambda Acted with Improper Motive or Means.

The Complaint also sufficiently alleges that Red Lambda had an improper motive and used improper means in interfering with Arbor's contractual business relations without lawful justification or legitimate reason. *Id.* at ¶ 192. Red Lambda's hiring of the Individual Defendants when it knew or should have known that they were bound by non-compete agreements is sufficient to show improper motive or means. *See W.B. Mason Co., Inc. v. Staples, Inc.*, 2001 WL 227855, *7-8 (Mass. Super. Ct. Jan. 18, 2001) (finding likelihood on the merits of intentional interference claim where new employer was aware of employees' non-compete agreements with former employer); *Cambridge Internet Solutions, Inc. v. Avicon Group*, 1999 WL 959673, *3 (Mass. Super. Ct. Sept. 21, 1999) (plaintiff stated sufficient cause of action for intentional interference where it alleged that the defendants solicited former employee to leave plaintiff's employ in violation of a non-compete agreement); *Hilb Rogal & Hobbs of Mass., LLC v. Sheppard*, Suffolk County Superior Court, C.A. No. 07-5549-BLS2 (Mass. Super. Ct. Dec. 31, 2007) (new employer's actions in encouraging plaintiff's employees to join its employ in violation of employees' non-compete agreements sufficient to show improper means). This is particularly so where the Complaint alleges that as a result of their hire, Red Lambda knowingly benefitted from Gill's and McEachin's alleged misappropriation of confidential information and trade secrets. Cmp., ¶¶ 204-11. *See, e.g., TalentBurst, Inc. v.*

6

*Collabera, Inc.*, 567 F. Supp.2d 261, 269 (D. Mass. 2008) (noting that offering employment in violation of non-compete agreement, particularly when coupled with allegations that new employer benefitted from misappropriation of former employer's confidential information, would be sufficient to show "improper motive or means").

Indeed, the goal of harming Arbor, a competitor, by hiring so many of its employees in violation of their employment agreement, constitutes improper motive.  *See TalentBurst*, 567 F. Supp.2d at 268; *Adcom Prods., Inc. v. Konica Business Machines USA, Inc.*, 41 Mass. App. Ct. 101, 105 (1996) (motive of hurting competitor sufficient to satisfy "improper motive or means"). The Complaint alleges that Red Lambda markets its products and services in part as a replacement to Arbor's products and services, *id.* at ¶ 54.  It also alleges that Arbor has lost over one-third of its SE positions in the United States to Red Lambda, and that prior to Ronca's employment, Red Lambda had only one salesperson on its staff, compared with a current sales force consisting primarily of former Arbor employees. *Id.* at ¶¶ 107-08.  Moreover, the Complaint alleges that Red Lambda instructed Scanlon not to speak with anyone at Arbor after joining Red Lambda, *id.* at ¶ 106, suggesting that Red Lambda was aware that its actions in hiring Scanlon (and the other Individual Defendants) would harm Arbor.  These allegations are more than sufficient to support a reasonable inference that Red Lambda had an improper motive for hiring the Individual Defendants in violation of their employment agreements - namely, to injure its competitor, Arbor.

**III.       The Complaint States a Claim for Violation of Chapter 93A**

Red Lambda contends that Arbor's Chapter 93A claim must be dismissed because this claim purportedly arises from Arbor's former employment relationships with the Individual Defendants, and because Arbor has supposedly not alleged that Red Lambda's conduct arose

7

"primarily and substantially" in Massachusetts.  These contentions are erroneous and unavailing, and for the reasons set forth below, this Court should deny Red Lambda's Motion accordingly.

### a. Arbor's 93A Claim is not Barred Because of the Individual Defendants' Employment Relationship with Arbor.

While the violation of a non-compete agreement by a former employee typically falls outside the scope of Chapter 93A, Massachusetts courts have repeatedly recognized that a corporation may be liable to the former employer under Chapter 93A even if the employee himself could not be.  In *Augat, Inc. v. Aegis, Inc.*, the Supreme Judicial Court found that the defendant employer, who hired plaintiff's former employee, was liable for violation of Chapter 93A, even where the employee himself could not be held liable for violation.  408 Mass. 165, 172, 177 n.7 (1991). The Court stated that it rejected "the defendants' suggestion that, because [plaintiff's former] employee could not be liable to [plaintiff] under G.L. c. 93A, they also may not be liable under G.L. c. 93A.") (internal citations omitted).  *See also Guest-Tek Interactive Entertainment, Inc. v. Pullen*, 665 F. Supp. 2d 42, 47 (D. Mass. 2009) (despite the fact that former employee could not be liable under Chapter 93A, claim would lie against his new employer); *Nat'l Econ. Research Assocs., Inc. v. Evans*, 2008 WL 4352600, *12-13 (Mass. Super. Ct. Sept. 10, 2008) (noting *Augat*'s holding that a new employer may be liable under Chapter 93A to former employer, even where former employee could not be held liable); *Network Sys. Architects Corp. v. Dimitruk*, 2007 WL 4442349, *11 (Mass. Super. Ct. Dec. 6, 2007) (93A claim based on misappropriation of trade secrets did not "arise from any employment relationship, except in the sense that [the new employer] had the opportunity to do so as a result of [the employee's] access to [the former employer's] trade secrets in the course of his employment."); *Acordia N.E., Inc. v. Academic Risk Res. & Ins., LLC*, 2005 WL 704870, *5 n.8 (Mass. Super. Ct. Jan. 5, 2010) ("The acts of [the new employer], through its employees, in

8

directly moving in to take over the business of [former employer's] clients in the face of non-solicitation agreements that barred such conduct, smacks of unfairness, and supports the merits of the c. 93A claim."); *W.B. Mason*, 2001 WL 227855 at *8 (new employer's offering of positions to plaintiff's employees despite knowledge of their employment agreements "could well be seen to raise an eyebrow of someone inured to the rough and tumble of the world of commerce.") (internal citations and punctuation omitted).

Here, Arbor has alleged in the Complaint that Red Lambda intentionally interfered with Arbor's contractual agreements, and that it is liable for misappropriation of Arbor's trade secrets and/or confidential information because it knowingly benefited from misappropriation committed by Gill and McEachin. Cmp. ¶¶ 122, 153, 187-95, 205-11.[4] Such actions suffice to form the basis for a Chapter 93A claim against Red Lambda. *Cambridge Internet Solutions*, 1999 WL 959673, at *3-4 (denying motion to dismiss Chapter 93A claim based on intentional interference with contractual relations); *Steelcraft, Inc. v. Mobi Med., LLC*, 2008 WL 5146879, *2-3 (Mass. Super. Ct. Nov. 13, 2008) (misappropriation of trade secrets may give rise to claim under Chapter 93A); *Network Sys. Architects*, 2007 WL 4442349, *11 (denying summary judgment motion where plaintiff had alleged that new employer was liable for misappropriation); *Guest-Tek*, 665 F. Supp. 2d at 47. Accordingly, Red Lambda's Motion should be denied.

### b. Arbor has Sufficiently Alleged that Red Lambda's Conduct Occurred Primarily and Substantially in Massachusetts for Purposes of a Motion to Dismiss.

Similarly, Red Lambda's argument that the Chapter 93A claim against it must be dismissed for Arbor's supposed failure to allege that the conduct at issue in this case arose "primarily and substantially" in Massachusetts is unavailing. First, Arbor *has* alleged that the conduct constituting violations of Chapter 93A occurred primarily and substantially in

---

[4] Notably, Red Lambda has not moved to dismiss the misappropriation claims against it.

14864203v.1

Massachusetts. Cmp. ¶ 199. Moreover, the language of the statute specifically states that in determining whether the conduct alleged to violate Chapter 93A occurred primarily and substantially in Massachusetts, "the burden of proof shall be upon the person claiming that such transactions and actions did not occur primarily and substantially within the commonwealth." *See* Mass. Gen. L. c. 93A, § 11. Accordingly, it is inappropriate at the motion to dismiss stage, where all well-pled allegations must be accepted as true and all reasonable inferences must be drawn in favor of the non-moving party, for this Court to make factual findings regarding whether or not the conduct alleged occurred primarily and substantially in Massachusetts. Indeed, such a determination "must be made on the basis of factual findings. Since a Court does not make such findings when ruling on a motion to dismiss, it would seem that a motion to dismiss is no longer an appropriate vehicle for raising this issue." *Guest-Tek Interactive Entertainment Inc. v. Pullen*, 731 F. Supp.2d 80, 92 (D. Mass. 2010) (quoting *Workgroup Tech. Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp.2d 102, 118 (D. Mass. 2003)). *See also Berklee College of Music, Inc. v. Music Industry Educators, Inc.*, 733 F. Supp.2d 204, 213 (D. Mass. 2010) ("Due to the fact-finding process necessarily involved in evaluating the issue, this particular ground for challenging a c. 93A claim-absent some extraordinary pleading concession by a claimant-cannot be resolved on Rule 12 motions. Indeed, despite Defendants' contentions, this issue is an 'affirmative defense' to be decided on the basis of factual findings which are not appropriately made at the pleading stage.") (internal punctuation and citations omitted).

Moreover, "[f]or purposes of a motion to dismiss, a section eleven cause of action should survive a 'primarily and substantially' challenge so long as the complaint alleges that the plaintiff is located, and claims an injury in Massachusetts." *Guest-Tek*, 731 F. Supp.2d at 92 (internal punctuation and citations omitted) (denying motion to dismiss where counterclaim

plaintiff was located in Massachusetts and allegedly suffered harm there); *Berklee*, 733 F. Supp.2d at 213 ("As Plaintiff acted and continues to act on the wrongful conduct in Massachusetts by working to maintain and build its reputation and Plaintiff sustained and continues to sustain losses caused by the wrongful conduct in Massachusetts, at the very least factual issues remain as to where the conduct primarily and substantially occurred. Dismissal of the 93A claim is therefore inappropriate for that reason").  Arbor's principle place of business is in Massachusetts and accordingly it has suffered harm in Massachusetts due to Red Lambda's unfair or deceptive conduct.  Cmp. ¶¶ 7, 202.  Thus, dismissal of Arbor's Chapter 93A claim is inappropriate at this stage.

**IV.     If Red Lambda's Motion is Granted in any Respect, Arbor Should be Given Leave to Amend.**

If this Court is inclined to grant any portion of Red Lambda's Motion, Arbor respectfully requests leave to amend the Complaint.  The Federal Rules provide that leave to amend should be "freely granted when justice so requires." *See* Fed. R. Civ. P. 15(a).  "In the absence of any apparent or declared reason . . . the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "[O]utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Id.*[5]

## CONCLUSION

Because Arbor has detailed the grounds for the relief that should be granted in this case in over 200 well-pled factual allegations, it has satisfied the liberal pleading standards set forth in

---

[5] During its continued investigation, Arbor has discovered additional facts in support of its claims against Red Lambda, including but not limited to additional facts related to its solicitation of Arbor customers and employees. While Arbor maintains that, per this Opposition, it has set forth more than sufficient factual allegations to withstand a Rule 12(b)(6) motion, it respectfully maintains that it is entitled to amend the Complaint to incorporate such newly discovered facts should this Court determine otherwise.

Fed. R. Civ. P. 8(a).  Arbor's Complaint easily meets the standards set forth in that rule, as explained by the Supreme Court in *Iqbal* and *Twombly*, and therefore Red Lambda's Motion to Dismiss must be denied.  Alternatively, if this Court grants the Motion in any respect, Arbor respectfully requests leave to amend the Complaint.

                                ARBOR NETWORKS, INC.

                                By its attorneys,

                                /s/ *Dawn Mertineit*
                                Katherine E. Perrelli (BBO #549820)
                                Dawn Mertineit (BBO #669988)
                                SEYFARTH SHAW LLP
                                World Trade Center East
                                Two Seaport Lane, Suite 300
                                Boston, MA  02210
                                Telephone:  (617) 946-4800
DATED:  September 28, 2012          Facsimile:   (617) 946-4801

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants, as identified on the Notice of Electronic File ("NEF"), and paper copies will be sent to those indicated as non-registered participants on September 28, 2012, by first class mail.

                                /s/ *Dawn Mertineit*
                                Dawn Mertineit