UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARBOR NETWORKS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 12-11322 |
| v. | ) |
| | ) |
| WILLIAM E. RONCA III, RICHARD SHIRLEY, DOUGLAS FLEMING, JAMES GILL, JAMES NEEL, JASON MCEACHIN, MICHAEL L. PORTER, ANDREW HENKART, PAUL SCANLON, MICHAEL HOLLYMAN, and RED LAMBDA, INC., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF ARBOR NETWORKS, INC.'S MOTION TO COMPEL RED LAMBDA, INC.'S PRODUCTION OF DOCUMENTS**

Plaintiff Arbor Networks, Inc. ("Arbor" or "Plaintiff") submits this memorandum of law in support of its Motion to Compel Red Lambda, Inc.'s Production of Documents and Things (the "Motion") filed contemporaneously herewith, by which it requests an order compelling defendant Red Lambda, Inc. ("Red Lambda") to produce documents responsive to Arbor's First Request for Production of Documents (the "Request"). The requested information is reasonably calculated to lead to the discovery of admissible evidence, and Red Lambda has provided no rational basis for its refusal to produce the requested information. The Court should therefore grant Arbor's Motion and compel Red Lambda to produce the limited and specific requested documents.

## RELEVANT FACTS

Arbor filed its First Amended Verified Complaint (the "Complaint") against Red Lambda and the Individual Defendants on August 6, 2012, asserting a variety of claims against the Defendants, including breach of contract, violations of the Computer Fraud and Abuse Act, intentional interference with contractual relations, misappropriation of trade secrets and/or confidential information, and violations of Chapter 93A.

The Complaint alleges that over the span of just fourteen months, Red Lambda, a competitor of Arbor in the network security and anomaly detection industry, systematically raided and hired ten former Arbor employees when it knew or should have known of their contractual obligations to Arbor, including covenants not to compete, agreements not to solicit Arbor customers or employees, and agreements prohibiting the misuse of Arbor's confidential business information.  Red Lambda first hired defendant William E. Ronca III ("Ronca"), the former Vice President of America Sales at Arbor, who later acted as the "pied piper" in hiring away Arbor's employees, including teams of salespeople and technical engineers.   A substantial portion of Red Lambda's sales force now consists of former Arbor employees.  Ronca breached his agreement with Arbor by accepting employment with Red Lambda just months after his termination from Arbor, soliciting or encouraging Arbor customers to terminate or modify adversely their relationship with Arbor, soliciting other Arbor employees to work for Red Lambda within the twelve months immediately following his termination, and by disparaging Arbor and its products to Arbor's customers.

The remaining Individual Defendants breached their agreements with Arbor by accepting employment with Red Lambda within twelve months of their departure from Arbor and by soliciting or encouraging (or working with others to solicit or encourage) Arbor customers to

terminate or modify adversely their relationship with Arbor.  Gill and McEachin further breached their agreements by, *inter alia*, permanently deleting all files on their Arbor-issued computers, which they failed to return to Arbor until weeks after the termination of their employment.  Arbor's Complaint asserts that Red Lambda participated in, encouraged, or directed some or all of the Individual Defendants' unlawful actions.

On August 16, 2012, Arbor served the Request on Red Lambda.  *See* Exhibit A.  On September 18, 2012, Red Lambda served its responses to the Request (the "Responses").  *See* Exhibit B.  In its Responses,  Red Lambda asserted wholesale objections to virtually every request propounded by Arbor, and seemingly agreed only to produce employment agreements between the Individual Defendants and *Arbor* (not Red Lambda), *see* Responses p. 6, and the document retention policy in effect during the Individual Defendants' employment with Red Lambda, *see id.* at p. 13.

On October 1, 2012, counsel for Arbor sent a letter to Red Lambda's counsel regarding Red Lambda's objections and apparent refusal to produce virtually any documents in response to the Request.  *See* Exhibit C.  Specifically, Arbor set forth its concerns regarding each of Red Lambda's inappropriate objections, and requested that Red Lambda confirm whether it was refusing to produce documents other than those identified above.  On October 5, 2012, counsel for the parties conducted a discovery conference pursuant to Local Rule 7.1(A)(2), during which they discussed Red Lambda's objections to the Request.  During that conference, counsel for Red Lambda was unprepared or unwilling to describe what documents Red Lambda would agree to produce in response to the vast majority of Arbor's requests, despite having served its Responses over two weeks prior, and having received Arbor's correspondence regarding Red

14903685v.2

Lambda's inappropriate objections several days earlier.[1]  Counsel for Red Lambda indicated that he likely could not supplement his responses prior to a week following the conference, or October 12, 2012.  In light of the expedited nature of this action, Arbor cannot continue to wait for Red Lambda to delay in explaining to Arbor what it is willing to produce in response to the Request.  Accordingly, Arbor hereby moves to compel the production of documents as set forth herein.

## ARGUMENT

### A.   Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . .  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  Indeed, the rules governing discovery "are to be accorded broad and liberal treatment."  *McCarron v. J.P. Morgan Sec., Inc.*, 2008 WL 2066940, *5 (D. Mass. May 14, 2008) (quoting *Klonoski v. Mahlab*, 156 F.3d 255, 267 (1st Cir. 1998)).  "[R]elevancy is broadly construed at the discovery stage of litigation and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action."  *Id* (internal citations and quotations omitted); *Mays v. Town of Hempstead*, 2011 WL 4345164 (E.D.N.Y. Sept. 15, 2011) (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)) (same).

---

[1] In its Responses, Red Lambda objected to several requests on the grounds that "it is unable to gather any electronic documents responsive to this request" due to spoliation fears, despite the fact that it had previously represented that it had undertaken all appropriate measures to preserve relevant metadata.  During the discovery conference, counsel for Red Lambda represented that it would, in fact, produce electronically stored information.  Accordingly, Arbor accepts Red Lambda's representations that it will not withhold documents stored electronically on the basis of spoliation concerns and does not move to compel such information, but reserves its rights to so move should Red Lambda fail to produce electronic documents.

**B.    Red Lambda's Failure To Promptly Commence Its Search**

Counsel for Red Lambda acknowledged that for many of the requests, despite having been served with the Request nearly two months ago, Red Lambda had failed to undertake any steps to search for responsive documents as of October 5, 2012, on the basis that a protective order had not been entered by the Court.[2]  This unexplained and unwarranted refusal to search for responsive documents prior to the entry of a protective order contributed in large part to Red Lambda's inability to explain what categories of documents it would produce in response to a majority of Arbor's requests as late as October 5, 2012.

Red Lambda's contention that it was unable to search for response documents in the absence of a protective order is unfounded, and compels the conclusion that Red Lambda is attempting to delay fulfilling its discovery obligations.  While Red Lambda could legitimately assert that it was unable to *produce* responsive documents in the absence of a protective order, there is absolutely no explanation for Red Lambda's position that it could not even *search* for responsive documents prior to the entry of the protective order (particularly where Red Lambda failed to inform Arbor that it would delay searching for such documents until the protective order had been entered).  Red Lambda's failure to even conduct a cursory investigation of the potential scope of documents responsive to several of Arbor's requests, over seven weeks after having been served with the Request, is egregious and a violation of its obligations to comply with discovery.[3]

---

[2] This Court entered the parties' proposed protective order (the "Protective Order") on October 9, 2012.

[3] Additionally, while not reflected in its Responses, during the discovery conference, counsel for Red Lambda suggested that it would not produce documents that are relevant only to those claims which it has moved to dismiss.  Even if Red Lambda had timely moved to stay discovery

### C. Specific Requests

Arbor specifically moves to compel the production of documents and things with respect to the following categories:

#### a. Request No. 1

Request No. 1 seeks:

> All documents evidencing, concerning, or referring to Red Lambda's efforts to hire employees for its sales force in North America between February 1, 2010 through the present, including but not limited to the positions for which the Individual Defendants were hired. This request shall include without limitation documents evidencing, concerning, or referring to Red Lambda's job descriptions and advertisements for such positions.

In its October 1 correspondence and during the discovery conference, Arbor stated that job descriptions, advertisements, and other records related to Red Lambda's hiring for such positions during the time period requested by Arbor were relevant to determine Red Lambda's efforts to build its sales force. Arbor has specifically alleged in the Complaint that prior to Defendant Ronca's hiring, Red Lambda had only one salesperson on its staff, and that as of the

---

on these claims, it is unlikely that it would have succeeded. "The burden of proof imposed on the party seeking a stay is a stiff one. To create a full-blown procedure, or to make a stay more readily obtainable simply because there is a colorable motion to dismiss," would undermine the Federal Rules. *In re Lotus Development Corp. Securities Litigation,* 875 F. Supp. 48, 51 (D. Mass. 19995). *See also Kleinerman v. U.S. Postal Service,* 100 F.R.D. 66, 68 (D. Mass. 1983) (if "mere bald assertions" that complaint should be dismissed "controlled when a defendant was subject to discovery orders, much of the discovery in federal courts would come to a grinding halt without the necessary assurances that the delay was truly warranted"); *Morien v. Munich Reinsurance America, Inc.*, 270 F.R.D. 65 (D. Conn. 2010) (party seeking stay of discovery must show good cause; pendency of dispositive motion is not automatic grounds for stay). In any event, as Red Lambda has not moved to stay discovery related to those claims since it filed its motion to dismiss over a month ago on September 14, 2012, it cannot now claim that it is entitled to withhold documents related to such claims. Indeed, this Court stated at the October 9, 2012 hearing on Red Lambda's partial motion to dismiss that its decision on that motion would not affect the scope of discovery. Moreover, since Red Lambda did not assert such an objection in its Responses, it is not clear to which requests this objection applies, and Arbor is unable to respond to this assertion. Accordingly, Red Lambda must produce documents responsive to all of Arbor's requests.

date of the Complaint, Red Lambda's sales force consisted primarily of former Arbor employees, suggesting that Red Lambda targeted Arbor employees specifically.  The Complaint also alleges that Ronca breached his employment agreement with Arbor by soliciting Arbor employees to work for Red Lambda.  Records showing, for example, what positions Red Lambda advertised for, the job descriptions for those positions, how many candidates were interviewed, etc., in the period leading up to the Individual Defendants' hires are relevant not only to the circumstances surrounding the Individual Defendants' hires (e.g., whether their positions are competitive), but also the efforts Red Lambda undertook to explore other non-Arbor candidates, if any, or if Red Lambda in fact only targeted Arbor employees.  Accordingly, the documents requested are relevant to many of Arbor's claims, including its intentional interference claims against both Ronca and Red Lambda, its Chapter 93A claim against Red Lambda, and its breach of contract claims against the Individual Defendants.  However, Red Lambda's Response does not indicate whether it will produce any responsive documents, and at the parties' discovery conference, counsel for Red Lambda simply said that he would provide a supplemental response at a later date.

      Red Lambda has also objected to this request on the grounds that it seeks personal information related to non-parties (for example, employment records for non-party applicants).  However, as previously noted, documents will be produced subject to the Protective Order entered by this Court on October 9, 2012, preventing Arbor from disclosing such documents outside the litigation.  Moreover, Arbor is unaware of any privilege or privacy right governing such documents that would not give way to a litigant's right to relevant evidence.

      b.  **Request No. 2**

Request No. 2 seeks:

> All oral or written communications, including by and between Red Lambda and Individual Defendants, pertaining to the hiring of each Individual Defendant, from August 1, 2010 to the present.

These documents are clearly relevant to Arbor's claims against the Defendants for the same reasons set forth above, yet Red Lambda has asserted a wholesale objection in its Responses. During the discovery conference, counsel for Red Lambda indicated that Red Lambda would produce "some of [what was requested]," but was unwilling or unprepared to extrapolate on what documents it would produce. In light of the plainly relevant and probative nature of such documents, Red Lambda is obligated to produce all responsive documents discovered after a reasonable search.

### c. Request No. 3

Request No. 3 seeks:

> All documents evidencing, concerning or referring to any oral or written agreements or contracts, including employment agreements, between Red Lambda and any former Arbor employee, including but not limited to the Individual Defendants, from August 1, 2010 to the present.

Red Lambda has indicated that it will produce the Individual Defendants' employment agreements and related contracts, but apparently is unwilling to produce such additional responsive documents as offer letters, documents related to the negotiation and execution of such agreements, etc. Red Lambda objected in part because "the claims alleged against Red Lambda . . . are for alleged tortious interference by Red Lambda with Arbor employment agreements by hiring these employees. This request is therefore overly broad."

Arbor is entitled to review additional documents concerning or referring to such agreements or contracts. Details as to Red Lambda's agreements or contracts with former Arbor employees, including the Individual Defendants, are plainly relevant to Arbor's claims. For example, the terms of an employee's compensation or employment in general, if tied to business

14903685v.2

generation or promises made by the employee during negotiations regarding business generation from Arbor customers, would be directly relevant to Arbor's claims, both against Red Lambda *and* the Individual Defendants. Even assuming that Red Lambda could demonstrate that this information is not relevant to Arbor's claims against Red Lambda (which Arbor denies), Red Lambda cannot refuse to produce evidence relevant to Arbor's claims against the Individual Defendants.

    d.  **Request No. 4**

Request No. 4 seeks:

All documents concerning, evidencing or referring to Red Lambda's knowledge of Arbor's employment agreements with the Individual Defendants.

These documents are quite clearly relevant to all of Arbor's claims against Red Lambda. Specifically, Red Lambda's knowledge of the Individual Defendants' agreements is directly relevant to Arbor's claims that Red Lambda intentionally interfered with Arbor's contractual relations (and Arbor's Chapter 93A claims based, in part, on such interference). In its Responses, Red Lambda asserted a wholesale objection to production of such documents. During the parties' discovery conference, counsel for Red Lambda indicated that he would "need to see" if searching for such responsive documents would be overly burdensome, and indicated that Red Lambda had not yet even conducted *any* investigation as to the burden of producing responsive documents. In light of the highly relevant nature of these documents, Red Lambda clearly must conduct a reasonable search for documents evidencing its knowledge of Arbor's employment agreements with the Individual Defendants. Red Lambda's objections to this request are borderline frivolous.

    e.  **Request No. 8**

Request No. 8 seeks:

>All documents evidencing, referring to or concerning communications from August 1, 2010 to the present between Red Lambda or any of its employees, including but not limited to the Individual Defendants, and any Arbor customer or prospective customer with whom the Individual Defendants had contact while employed by Arbor between February 1, 2010 and the date of the termination of their relationship with Arbor. This request shall include documents related to any presentations made to such customers or prospects.

Arbor has requested documents related to communications between Red Lambda (and any of its employees) and "any Arbor customer or prospective customer with whom the Individual Defendants had contact while employed by Arbor" for the period of February 1, 2010 through the date of the termination of their employment. Efforts taken by Red Lambda to solicit Arbor's customers or prospective customers with whom the Individual Defendants had relationships are relevant to all of Arbor's claims against Red Lambda as well as Arbor's claims against the Individual Defendants. For example, documents evidencing such efforts would support Arbor's breach of contract claims against the Individual Defendants, as well as its intentional interference claims against both Ronca and Red Lambda, and its Chapter 93A claim which is based, in part, on Red Lambda's intentional interference. Despite the obvious relevance of these documents to Arbor's claims, Red Lambda has refused to produce anything in response to this request.

In part, Red Lambda has objected to the time frame set forth in the Request as it requests documents prior to the Individual Defendants' hires. However, such documents are relevant to show whether Red Lambda had previous relationships with Arbor's customers; to the extent Red Lambda was *not* previously soliciting those customers prior to the Individual Defendants joining Red Lambda, such information would support Arbor's claim that Red Lambda hired the Individual Defendants specifically to obtain business from Arbor customers.

In addition, as a partial basis for its refusal to produce responsive documents to this request (and to Requests No. 9 and 10 as well), Red Lambda has indicated that it has entered into non-disclosure agreements ("NDAs") with customers or prospective customers, preventing it from producing *any* documents related to those entities. The mere fact that Red Lambda may have NDAs with certain customers or prospects does not support its attempts to shield all discovery. First, such agreements would not protect all communications from disclosure. Certainly, Red Lambda cannot hope to shield *its own confidential information* from Arbor by virtue of these NDAs; at most, the *customers' confidential information* would be protected. Correspondence between Red Lambda and customers that do *not* contain customers' confidential information (such as, for example, correspondence regarding Red Lambda's products, scheduling trials or confirming orders, or other attempts on Red Lambda's behalf to sells its products or services) cannot be shielded by an NDA. Correspondence between such parties go to the very heart of Arbor's claims that Red Lambda competes with Arbor's products and services, that the Individual Defendants solicited Arbor clients in violation of their employment agreements, and that Red Lambda benefitted from misappropriation of Defendants Gill and McEachin (in other words, that the confidential information improperly obtained by Gill and McEachin enabled Red Lambda to solicit Arbor's customers or prospects). Moreover, this objection disregards the fact that the parties have agreed to a protective order which would allow Red Lambda to produce documents on an attorneys' eyes only basis, thereby shielding sensitive customer information from Arbor employees; other documents would be designated merely "Confidential," and would not be subject to disclosure beyond the case at hand.

In sum, if courts allowed such attempts to prevent discovery as those taken by Red Lambda due to the existence of NDAs, it would be virtually impossible to prevail on claims of

intentional interference, breach of non-solicit agreements, and misappropriation claims in circumstances such as these, because the accused party could simply prevent any evidence of wrongdoing from seeing the light of day by purporting to protect evidence from disclosure using NDAs. It is axiomatic that a "promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement." *Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987). Here, the public policy favoring litigants' access to relevant information far outweighs any interest in strictly enforcing the NDAs (even assuming for the sake of argument that the NDAs do not contain an exception for documents requested in litigation, which is highly improbable), particularly where information can be produced under an "Attorneys' Eyes Only" designation.[4]

### f. Request No. 9

Request No. 9 seeks:

All documents evidencing, referring to or concerning any new business secured by Red Lambda or the Individual Defendants on Red Lambda's behalf from August 1, 2010 to the present from the customers or prospective customers with whom the Individual Defendants had contact while employed by Arbor between February 1, 2010 and the date of the termination of their relationship with Arbor.

Red Lambda asserted objections substantially similar to those asserted in response to Request No. 8. For the same reasons set forth above with respect to Request No. 8, these documents are relevant to Arbor's claims, and Red Lambda's objections are unavailing.

### g. Request No. 10

Request No. 10 seeks:

---

[4] Had Red Lambda truly been concerned about how document production would affect its NDAs, it could have, out of an abundance of caution, notified those entities covered by NDAs to allow them to move for a protective order if necessary. Notably, over 7 weeks have passed since Arbor served the Requests, and counsel for Red Lambda had indicated that it has not informed *any* of its customers or potential customers that it was obligated to produce relevant documents.

14903685v.2

> All documents concerning or referring to Arbor or its products or products in development, including but not limited to any communications between Red Lambda and any former Arbor employee, including but not limited to the Individual Defendants, related to such products.

Arbor has requested documents related to "Arbor or its products or products in development." Red Lambda asserted objections substantially similar to those asserted in response to Request No. 8. For the same reasons set forth above with respect to Request No. 8, these documents are relevant to Arbor's claims, and Red Lambda's objections are unavailing.

Additionally, Red Lambda has indicated that it is unable to identify Arbor's products or products in development. In its October 1 correspondence, Arbor noted that at a minimum, Arbor is aware of the three Arbor products identified in the complaint. Moreover, to the extent that Red Lambda employees discussed Arbor products in emails or other documents, such employees would be able to provide counsel with search terms sufficient to conduct a reasonable search of Red Lambda's records.

Red Lambda has also objected that searching for documents referring to Arbor would be unduly burdensome, a particularly egregious objection in light of the fact that the Defendants have asked Arbor for "[d]ocuments concerning Red Lambda . . . from January 1, 2005 through present" (and Arbor has agreed to produce documents responsive to this request). Arbor needs to review documents that reference Arbor and its products to determine, *e.g.*, if Red Lambda considers Arbor a competitor, whether Red Lambda was targeting Arbor employees and customers, whether Red Lambda received and benefitted from confidential Arbor information, etc. Red Lambda's objection to this Request is inappropriate and should not be countenanced.

      h.    **Request No. 11**

Request No. 11 seeks:

> All documents and things that constitute, evidence, concern, or refer to documents or information belonging to Arbor that Red Lambda received from former Arbor employees (including but not limited to the Individual Defendants), including without limitation via email or removable storage device, on or after August 1, 2010.

Such documents are directly relevant to Arbor's misappropriation claims, as well as its claims that the Individual Defendants breached their obligations under their respective employment agreements with Arbor.  Nonetheless, Red Lambda has apparently objected to producing any documents responsive to this request.  Red Lambda asserts that it is unaware of what documents Arbor considers to be "belonging" to Arbor.  Such mincing of words is nothing more than an attempt to further delay discovery and avoid producing relevant documents.  Arbor states that Red Lambda must conduct a reasonable search of its records for documents it received from former Arbor employees containing Arbor proprietary information, such as documents created by Arbor or its employees.

### i. Request No. 12

Request No. 12 seeks:

> All documents relating to the destruction, alteration, or deletion of Arbor property, including but not limited to electronically-stored information, from August 1, 2010 to the present date. The requested documents include, without limitation, notes, memoranda and correspondence, including without limitation, facsimile and e-mail transmissions.

These documents are relevant to Arbor's claims that the Individual Defendants committed violations of the Computer Fraud and Abuse Act and/or otherwise breached their obligations to Arbor pursuant to their employment agreements.  These documents are also relevant to determine whether any of the Defendants, including Red Lambda, have violated their obligation to preserve relevant data when reasonably put on notice of potential litigation.  The

relevance of these documents is particularly obvious in light of Defendants Gill's and McEachin's admitted destruction of relevant evidence.

In Red Lambda's response to this request, it stated that it was "unaware of any non-privileged responsive documents" in its possession, custody, or control. During the discovery conference, counsel for Arbor asked counsel for Red Lambda to confirm that Red Lambda would conduct a search for non-privileged documents responsive to this request. Counsel for Red Lambda indicated that he would check to see if this was possible, but has failed to respond as of the date set forth below. Arbor requests that this Court order Red Lambda to conduct a reasonable search of its records for documents responsive to this request.

### j. Request No. 14

Request No. 14 seeks:

> All documents evidencing, concerning, or referring to Red Lambda's efforts, if any, to search for, identify, secure, and/or separate Arbor information on Red Lambda's computer network.

Red Lambda has suggested that this document request seeks privileged material, to which Arbor responded during the discovery conference that it is seeking *non-privileged* documents. It is still unclear what Red Lambda is willing to produce, if anything. To the extent Red Lambda has taken the position that it is not obligated to produce responsive, non-privileged documents, Arbor requests that this Court compel Red Lambda to conduct a reasonable search for responsive documents.

## **CONCLUSION**

For the above reasons, the Court should grant this motion and order Red Lambda to produce the requested information.

14903685v.2

Respectfully submitted,

ARBOR NETWORKS, INC.

By its attorneys,

  /s/ *Dawn Mertineit*
Katherine E. Perrelli (BBO #549820)
Dawn Mertineit (BBO #669988)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA  02210
Telephone:  (617) 946-4800
DATED:  October 18, 2012    Facsimile:   (617) 946-4801


**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants, as identified on the Notice of Electronic File ("NEF"), and paper copies will be sent to those indicated as non-registered participants on October 18, 2012, by first class mail.

/s/ *Dawn Mertineit*
Dawn Mertineit

14903685v.2