**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **ARBOR NETWORKS, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WILLIAM E. RONCA, III; RICHARD SHIRLEY; DOUGLAS FLEMING; JAMES GILL; JAMES NEEL; JASON MCEACHIN; MICHAEL L. PORTER; ANDREW HENKART; PAUL SCANLON; MICHAEL HOLLYMAN; and RED LAMBDA, INC.,**<br><br>**Defendants.** | **Civil Action No. 12-11322-FDS** |

**MEMORANDUM AND ORDER**
**ON DEFENDANTS' MOTION TO DISMISS**

**SAYLOR, J.**

This is a dispute arising out of the departure of ten former employees of plaintiff Arbor Networks, Inc., for a competitor, defendant Red Lambda, Inc. Arbor contends that the defendant employees violated non-competition agreements and otherwise engaged in improper conduct when they left to work for defendant Red Lambda. The amended complaint alleges claims for breach of contract; intentional interference with contractual relations; misappropriation of trade secrets and confidential business information; violation of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 *et seq.*; and violation of Mass. Gen. Laws ch. 93A, §§ 2 and 11.

The ten individual defendants have filed a motion to dismiss several claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. Red Lambda has filed a separate motion to dismiss pursuant to Rule 12(b)(6). For the reasons set forth below,

the individual defendants' motion will be denied, and the motion of Red Lambda Inc. will be granted in part and denied in part.

## I. Factual Background

Unless otherwise noted, all facts are stated as alleged in plaintiff's amended complaint.

### A. The Parties

Arbor Networks, Inc., is a global provider of distributed denial of service attack protection, network security, and visibility solutions. (Compl. ¶ 22). It performs detection services and mitigation of security threats for both enterprise businesses and carrier businesses. (*Id*.). It has two main product lines: the Pravail, which is primarily sold to enterprise businesses, and Arbor Peakflow SP, which is primarily sold to carrier businesses. (Compl. ¶ 23).

Red Lambda, Inc., is a competitor of Arbor. (Compl. ¶ 47). Like Arbor, Red Lambda performs detection services and mitigation of security threats. (*Id*.). Both companies provide products that seek to track down and present undesirable behavior of users on a network. (Compl. ¶ 51). While the products may work somewhat differently, enterprises are likely to buy only one or the other at any time. (Compl. ¶¶ 51-52).

The ten individuals named as defendants are all former employees of Arbor who went to work for Red Lambda within twelve months of terminating their employment with Arbor. (Compl. ¶¶ 2-3). Through their employment with Arbor, they gained knowledge of Arbor's customers, products, and business strategy. (Compl. ¶ 46).

### B. The Agreements

While employed at Arbor, all ten individual defendants signed agreements governing acceptable conduct during and after termination of their employment with Arbor. (Compl. ¶¶ 59,

81). Defendants Michael Hollyman, William Ronca, and Paul Scanlon all signed the "Danaher Corporation and Its Affiliated Entities Agreement Regarding Solicitation and Protection of Proprietary Interests" (the "Danaher Agreement"). (Compl. ¶ 59). Defendants Douglas Fleming, Richard Shirley, Jason McEachin, James Neel, Michael Porter, James Gill, and Andrew Henkart all signed "Employee Confidentiality, Developments and Non-Solicitation Agreements" (the "Arbor Agreements"). (Compl. ¶ 81).

Both agreements required the individual defendants to promise:

- not to compete with Arbor in the twelve months after termination of their employment with Arbor (Compl. ¶¶ 62-64, 85);
- not to solicit, induce, or influence any Arbor employee to leave Arbor in the twelve months after termination of their employment with Arbor (Compl. ¶¶ 65, 85);
- not to use or disclose Arbor trade secrets or confidential information (Compl. ¶¶ 60, 82).

In addition, the Danaher Agreement required signatories to promise not to make disparaging remarks about Arbor to its customers or potential customers. (Compl. ¶¶ 66, 70). The Arbor Agreement required signatories to promise not to solicit or encourage Arbor's customers or potential customers to terminate or adversely modify their business relationships with Arbor in the twelve months after termination of their employment with Arbor. (Compl. ¶ 85).

### C. <u>The Individual Defendants' Departure from Arbor</u>

Ronca was terminated from Arbor on February 4, 2011. (Compl. ¶ 88). At the time, according to the complaint, he expressed ill will towards Arbor and threatened to retaliate. (Compl. ¶ 89). He also asked to keep his Arbor-issued laptop, and inquired about purchasing Arbor's products; both requests were denied. (Compl. ¶¶ 90-91).

Within two months, Ronca began working for Red Lambda. (Compl. ¶ 92). Once there, Ronca solicited several Arbor employees to leave Arbor for Red Lambda. (Compl. ¶ 111). Shortly thereafter, the remaining individual defendants began to resign from Arbor and accept employment with Red Lambda. (Compl. ¶¶ 94-102). While Scanlon and Hollyman became employed by a non-competitive entity before their employment with Red Lambda, the remaining seven individual defendants became employed by Red Lambda immediately. (*Id*.). All ten individual defendants accepted employment with Red Lambda within twelve months of termination of their employment with Arbor. (*Id*.). Prior to Ronca's employment with Red Lambda, Red Lambda had one salesperson on its staff. (Compl. ¶ 108). Red Lambda's current sales force consists primarily of former Arbor employees. (*Id*.).

**D. <u>Contact with Arbor Customers</u>**

According to the complaint, within the twelve-month period following the termination of their employment with Arbor, the individual defendants solicited Arbor's customers to terminate or adversely modify their relationship with Arbor. (Compl. ¶ 112). For example, during the summer of 2011, Shirley and Ronca participated in an email exchange with Henry Yu, an employee of Arbor customer TWT, discussing the execution of a mutual non-disclosure agreement between Red Lambda and TWT. (Compl. ¶ 113). In March of 2012, less than three weeks after he resigned from Arbor, Porter received an email from Henry Yu, again discussing a non-disclosure agreement between Lamda and TWT. (Compl. ¶ 114). On April 4, 2012, defendant Porter reached out to John Kelly, an employee of Arbor customer Comcast, to discuss a "team dinner" with Ronca, Porter, Henkart, and the president of Red Lambda. (Compl. ¶ 115). Red Lambda also conducted product trials with Neustar, Inc., AT&T, and Verizon—all Arbor customers. (Compl. ¶¶ 117-119).

The complaint further alleges that during the twelve months following the termination of his employment with Arbor, Ronca made disparaging comments about Arbor to Arbor's customers. (Compl. ¶ 119). According to the complaint, Ronca made disparaging remarks about Arbor to an officer of VeriSign, an Arbor customer. (*Id.*). These remarks prompted the VeriSign officer to question Arbor employees about their products. (*Id.*). In response to these comments, Arbor employee Doherty demanded that Ronca stop disparaging Arbor. (Compl. ¶ 120). One or more of the individual defendants allegedly also made disparaging remarks about Arbor to Arbor customer AT&T. (Compl. ¶ 121).

**E. <u>Individual Defendants' Use of Arbor Computers</u>**

According to the complaint, two of the individual defendants—Gill and McEachin—maintained possession of Arbor computers following the termination of their employment with Arbor. (Compl. ¶¶ 126, 140).

McEachin returned his computer nearly six weeks after his exit interview. (Compl. ¶ 126). A forensic analysis conducted by Arbor revealed that the computer had been wiped clean, such that no data could be recovered from it. (Compl. ¶¶ 127-28). McEachin also apparently segregated and archived 31 Arbor documents from the computer onto a USB device, including a number of presentations marked "Company Confidential." (Compl. ¶¶ 133).

Gill returned his Arbor computer eleven weeks after his exit interview, after numerous requests from Arbor. (Compl. ¶¶ 138-140). A forensic analysis conducted by Arbor revealed that the computer had been reformatted on May 4, 2012, leaving no data to be analyzed. (Compl. ¶ 141).

The complaint alleges that both individuals misappropriated Arbor's confidential information and trade secrets. (Compl. ¶ 137, 149). It further alleges that Red Lambda has

benefitted from this misappropriation. (Compl. ¶ 153).

## II. Standard of Review

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

## IV. Analysis

### A. Individual Defendants' Motion to Dismiss

The ten individual defendants have moved to dismiss the following claims: (1) breach of contract claims based on allegations of disparaging remarks by Ronca about Arbor to Arbor customers, (2) breach of contract claims based on allegations of solicitation by Ronca of Arbor employees, (3) breach of contract claims based on allegations of soliciting or encouraging Arbor's customers or potential customers to terminate or adversely modify their business relationship with Arbor, and (4) tortious interference with contractual relations claims against

Ronca.[1] For all these claims, the individual defendants contend that the amended complaint does not allege sufficient facts to survive a motion to dismiss.

While the complaint perhaps could have been more carefully worded, it is nonetheless sufficient to withstand a motion to dismiss as to those claims. In addition to pleading the elements of the various claims, the complaint sets forth more than 200 factual allegations about defendants' conduct that constitute far more than the "unadorned, the-defendant-unlawfully-harmed-me accusations[s]" rejected in *Iqbal* and *Twombly*. *See Twombly,* 550 U.S. at 555. These allegations give defendants fair warning of the conduct at issue and the scope of the issues that will be explored during discovery. The Court will address the allegations supporting each claim in turn.

First, there are sufficient facts alleged in the complaint to support a claim that Ronca breached his contract with Arbor by making disparaging remarks about Arbor to Arbor customers. The complaint alleges that Ronca signed an agreement that required signatories to promise not to make disparaging remarks about Arbor to its customers or potential customers. (Compl. ¶¶ 59, 66, 70.) It further alleges that Ronca made disparaging comments about Arbor to Arbor customers. Specifically, plaintiff contends that Ronca made disparaging comments about Arbor to an officer of VeriSign, an Arbor customer, (Compl. ¶ 119), and that these comments prompted the VeriSign officer to question Arbor staff about the adequacy of Arbor technology and about the recent loss of staff. (*Id*.). The complaint makes similar, although less specific, allegations about disparaging remarks made to Arbor customer AT&T. (Compl. ¶ 121). As

[1] The individual defendants have also moved to dismiss claims for misappropriation of trade secrets or confidential information against all individual defendants other than Gill and McEachin. At oral argument, plaintiff's counsel clarified that Gill and McEachin are the only individual defendants against whom this claim is asserted. Thus, the Court need not rule on a motion to dismiss these claims as to the other individual defendants.

pleaded, these factual allegations set forth both the existence of a contractual obligation and a violation of that obligation, and are sufficiently detailed to survive a motion to dismiss.

Second, there are sufficient facts alleged in the complaint to support a claim that Ronca breached his contract with Arbor by soliciting Arbor employees. The complaint alleges that Ronca signed an agreement that required signatories to promise not to solicit, hire, or attempt to persuade any Arbor employee to leave Arbor for twelve months after the signatory terminated their employment with Arbor. (Compl. ¶ 65). It then alleges that Ronca solicited several employees, including the other defendants, to leave Arbor. (Compl. ¶ 111). This allegation is supported by specific facts. According to the complaint, Ronca was terminated from Arbor on February 4, 2011, and was hired by Red Lambda in April 2011. (Compl. ¶¶ 88, 92). The remaining nine individual defendants all resigned from Arbor and were hired by Red Lambda within one year of the time Ronca began working there. (Compl. ¶¶ 94-102). At least two individuals, Shirley and Fleming, became employed by Red Lambda within the twelve months following Ronca's departure from Arbor. (Compl. ¶¶ 94-95). These allegations support a reasonable inference that Ronca induced some or all of the individual defendants to leave Arbor, in violation of his contractual agreement with Arbor. They are sufficiently detailed to give Ronca notice about the time period and conduct at issue in the suit. The allegations are plausible on their face, and accordingly are sufficient to survive a motion to dismiss.

Third, there are sufficient factual allegations in the complaint to support a claim that the individual defendants breached their contracts with Arbor by soliciting or encouraging Arbor's customers or potential customers to terminate or adversely modify their business relationship with Arbor. The complaint alleges that all individual defendants signed agreements while

employed at Arbor that prohibited former employees from having certain kinds of contact with Arbor's customers or potential customers for twelve months following their departure from Arbor. (Compl. ¶¶ 62-63, 85). The complaint then alleges several communications between individual defendants and Arbor customers on behalf of Red Lambda. (Compl. ¶¶ 113-18). According to the complaint, Shirley and Ronca participated in a lengthy e-mail exchange with an employee of Arbor customer named TWT, and Porter communicated with that same employee regarding a non-disclosure agreement between TWT and Red Lambda. (Compl. ¶¶ 113-14). The complaint also alleges communication between Porter and an employee at Comcast, another Arbor customer, regarding a "team dinner" with Ronca, Porter, Henkart, and the president of Red Lambda. (Compl. ¶ 115). Plaintiff contends that communications with both Arbor customers were addressed to employees who had served as main contacts for Arbor. (Compl. ¶¶ 114-15). The complaint further alleges that Red Lambda has conducted trials for Neustar, Inc., AT&T, and Verizon—all Arbor customers. (Compl. ¶¶ 117-18).

While it is true that plaintiff has not pleaded specific instances of solicitation or encouragement, there is no requirement that it do so at this early stage, without the benefit of any discovery. The allegations as pleaded, and the reasonable inferences drawn therefrom, state a plausible claim that the Individual Defendants solicited or encouraged Arbor customers to terminate or adversely modify their relationships with Arbor.

Finally, there are sufficient facts alleged in the complaint to support a claim of tortious interference with contractual relations against Ronca. To make out a claim for intentional interference with contractual relations, a plaintiff must set forth facts showing (1) he had a contract with a third party; (2) defendant knowingly induced the third party to break that

contract; (3) defendant's interference was improper in motive or means; and (4) plaintiff was harmed by defendant's actions. *Draghetti v. Chmielewski*, 416 Mass. 808 (Mass. 1994). To survive a motion to dismiss, plaintiff must allege facts to support each element of the claim. *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997).

Plaintiff has alleged facts to support each of these elements. At the time of Ronca's departure, all nine of the other individual defendants were employees of Arbor, and Ronca was aware of that employment relationship. As discussed above, the complaint alleges that all nine employees resigned from Arbor in rapid succession, and were hired by Red Lambda within one year of the time when Ronca began working there. (Compl. ¶¶ 94-102). The complaint also alleges facts to suggest an improper motive or means—plaintiff contends that Ronca had expressed ill will towards Arbor, and had threatened to retaliate against the company. (Compl. ¶ 89). Finally, plaintiff alleges that it has been harmed—for instance, it has had to spend time and money to find and train replacements. (Compl. ¶ 110).

On a motion to dismiss, the Court must not only take the facts pleaded as true, but must also draw reasonable inferences in plaintiff's favor. Based on the liberal pleading standard of Fed. R. Civ. P. 8(a), plaintiff has raised a right to relief above the speculative level on all four claims, and is entitled to discovery. *See Bell Atl. Co. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, the individual defendants' motion to dismiss will be denied.

**B. Red Lambda's Motion to Dismiss**

Defendant Red Lambda has moved to dismiss Count IV (intentional interference with contractual relations) and Count V (violation of Mass. Gen. Laws ch. 93A).

**1. Intentional Interference with Contractual Relations**

The complaint includes a claim of intentional interference with contractual relations against Red Lambda. This claim stems from Red Lambda's employment of the individual defendants in violation of the Danaher and Arbor agreements. Red Lambda has moved to dismiss this claim on the grounds that plaintiff has not sufficiently pleaded the elements of the offense.

As stated above, to make out a claim for intentional interference with contractual relations, a plaintiff must set forth facts showing (1) he had a contract with a third party; (2) defendant knowingly induced the third party to break that contract; (3) defendant's interference was improper in motive or means; and (4) plaintiff was harmed by defendant's actions. *Draghetti v. Chmielewski*, 416 Mass. 808 (Mass. 1994). To survive a motion to dismiss, plaintiff must allege facts to support each element of the claim. *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997).

Defendant does not contest that plaintiff has adequately pleaded the first and fourth elements. It contends, however, that plaintiff has pleaded insufficient facts to support its allegations that Red Lambda knowingly induced the individual defendants to breach their contracts or that Red Lambda's alleged interference was improper in motive or means.

The complaint alleges sufficient facts to suggest that Red Lambda knowingly induced the individual defendants to breach their contracts. First, plaintiff asserts that the Danaher agreement required signatories to affirmatively provide the agreement itself to subsequent employees. (Compl. ¶ 67). Second, Ronca himself had signed the agreement. (Compl. ¶ 59). Third, Arbor sent a cease-and-desist letter to Red Lambda's Executive Chairman and CEO, referring the employment agreements and attaching several of them to the letter. (Compl. ¶ 125).

The facts as pleaded are sufficient to state a claim that Red Lambda knew or reasonably should have known that the individual defendants were breaching their agreements with Arbor by accepting employment with Red Lambda.

The complaint also sets forth sufficient facts to state a claim that Red Lambda's actions were improper in motive or means. Offering a job to a competitor's at-will employee, without more, does not constitute improper means. *TalentBurst, Inc. v. Collabera, Inc.*, 567 F. Supp. 2d 261, 263 (D. Mass. 2008) (citing *Perishables By Air, Inc. v. OceanAir, Inc.*, 68 Mass. App. Ct. 1110 (2007); *see also Synergistics Tech., Inc. v. Putnam Investments, LLC*, 74 Mass. App. Ct. 686, 690 (2009). ("Pursuit of a legitimate business interest, without more, fails, to qualify as an improper means or motive[.]") However, plaintiff has pleaded sufficient additional facts to support a reasonable inference, at least at this stage in the suit, that Red Lambda's actions involved a motive other than pursuit of a legitimate business interest.

The complaint alleges that Ronca threatened to retaliate against the company, and generally expressed ill will towards his former employer. (Compl. ¶ 89). While the expression of ill will is, not in and of itself, sufficient evidence of improper means or motive, the complaint further alleges that Ronca had previously asked to keep his Arbor-issued laptop, and had inquired about purchasing Arbor products. (Compl. ¶¶ 90, 91). Taken together, these facts support a reasonable inference that Ronca was prepared to act on his threat of retaliation.

Further, plaintiff has also pleaded facts that support an inference that Red Lambda hired plaintiff's former employees with the goal of hurting their competitor. The complaint alleges that Red Lambda is a direct competitor of Arbor. (Compl. ¶ 1). According to the complaint, prior to Ronca's employment, Red Lambda had only one salesperson on its staff. (Compl. ¶

108). Now, Red Lambda has hired ten former Arbor employees, diminishing Arbor's sales force by one-third. (Compl. ¶¶ 1, 107).

The plausibility standard set forth in *Twombly* is not akin to a 'probability requirement.' *Iqbal*, 129 S. Ct. at 1949. It merely requires the complaint to plead sufficient facts to state a claim to relief that is plausible on its face. Plaintiff has set forth a plausible claim for intentional interference with contractual relations. Accordingly, defendant's motion to dismiss Count IV (Intentional Interference with Contractual Relations) will be denied.

**2. <u>Chapter 93A</u>**

The complaint includes a claim of unfair trade practices in violation of Mass. Gen. Laws ch. 93A §§ 2 and 11. This claim stems from Red Lambda's alleged tortious interference with plaintiff's contractual relationships, as set forth in the individual defendants' non-compete agreements. Red Lambda has moved to dismiss the claim on the grounds that Chapter 93A does not apply where (1) the claims at issue arise from employment agreements, or (2) where the claims arise from acts primarily and substantially outside the Commonwealth of Massachusetts.

Chapter 93A was intended to address the conduct of "individuals acting in a business context in their dealings with other business persons, and not [] every commercial transaction whatsoever." *Manning v. Zuckerman*, 388 Mass. 8, 10 (1983). The Supreme Judicial Court has squarely held that it was not intended to cover employment contract disputes. *Id.* at 12. Disputes arising out of the employer-employee relationship are not cognizable under chapter 93A. *Id*. at 14.

Massachusetts courts have re-affirmed this principle in the context of disputes involving non-compete agreements. In *Intertek Testing Services NA v. Curtis Strauss LLC*, the court

reasoned that "[i]f the actual willful breach of a non-compete agreement by an employee is not actionable under c. 93A because the claim arose from the employment relationship, then the conduct of a third party to induce such a breach must also not be actionable because this claim, too, arose from the employment relationship." 2000 WL 1473126 (Mass. Super. Ct. 2000); *see also TalentBurst*, 567 F. Supp. 2d at 270.

Plaintiffs cite a number of cases for the proposition that businesses may be liable under Chapter 93A even where individual employees may not be liable. These cases are inapposite, as they do not involve claims arising from alleged breaches of employee non-compete agreements. *See, e.g., Augat, Inc. v. Aegis, Inc.*, 565 N.E.2d 415 (Mass. 1991) (involving breach of a duty of loyalty); *Guest-Tek Interactive Entm't, Inc. v. Pullen*, 665 F. Supp. 2d (D. Mass. 2009) (involving misappropriation and misuse of confidential business information and trade secrets); *Network Sys. Architects Corp. v. Dimitruk*, 2007 WL 4442349, *11 (Mass. Super. Ct. Dec. 6, 2007) (involving misappropriation of trade secrets); *cf. Nat'l Econ. Research Assocs., Inc. v. Evans*, 2008 WL 4352600, *12-13 (Mass. Super. Ct. Sept. 10, 2008) (suggesting that it would have been sufficient if plaintiffs could have presented evidence to support a finding of improper motive or means sufficient to support a tortious interference claim).

Red Lambda's alleged tortious interference with plaintiff's contractual relationships, the basis of plaintiff's ch. 93A claim, is itself based on the individual defendants' non-compete agreements. These agreements arose during the course of an employment relationship between a company and its individuals employees. This dispute therefore arises out of the employer-employee relationship, and plaintiff's claim is not cognizable under Chapter 93A. *See Manning v. Zuckerman*, 388 Mass. 8, 14 (1983). Accordingly, defendant's motion to dismiss Count V

(violation of Mass. Gen. Laws ch. 93A) will be granted, and plaintiff's Chapter 93A claim will be dismissed.

Because plaintiff's Chapter 93A will be dismissed, the Court need not determine whether the claims arise from acts primarily and substantially outside the Commonwealth of Massachusetts.

## V. Conclusion

For the foregoing reasons, the individual defendants' motion to dismiss is DENIED, and Red Lambda's motion to dismiss is GRANTED in part and DENIED in part.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: November 14, 2012